STATE BANK OF BOYD, et al., Appellants,

v.

Michael A. HATCH, Commissioner of Commerce for the State of Minnesota, Federal Deposit Insurance Corporation, as Court-Appointed Receiver for the State Bank of Boyd, Respondents.

No. C8–85–2078.

Court of Appeals of Minnesota.

April 8, 1986.

---

Wendy Alison Nora, Minneapolis, for appellants.

Hubert H. Humphrey, III, Atty. Gen., Gregory P. Huwe, Sp. Asst. Atty. Gen., St. Paul, for Michael A. Hatch.

Brian E. Palmer, Kim A. Anderson, Dorsey & Whitney, Minneapolis, for Federal Deposit Ins. Corp.

Heard, considered and decided by POPOVICH, C.J., and FORSBERG and LESLIE, JJ.

## OPINION

POPOVICH, Chief Judge.

This appeal is from an order denying appellants' petition for an alternative writ of mandamus. Appellants claim the trial court (1) erred in entertaining respondents' arguments prior to issuance of the alternative writ, (2) abused its discretion in denying the petition, and (3) cannot use its discretion to refuse mandamus because appellants seek only to enforce rights clearly conferred by statute. We affirm.

## FACTS

Appellant State Bank of Boyd (Boyd) operated as a state-chartered banking corporation. Subsequent to examination conducted by state examiners and by respondent Federal Deposit Insurance Corporation (FDIC), a report of examination dated October 19, 1984 disclosed Boyd was in an unsafe and unsound condition to conduct business, its capital was impaired, it was insolvent, and it would soon be unable to meet the demands of its depositors. As a result, respondent Commissioner of Commerce Michael A. Hatch issued two orders on October 23, 1984. One effective October 24, 1984, stated the Commissioner was taking possession of Boyd's property and business pursuant to Minn.Stat. § 49.04 (1982). The other appointed respondent FDIC to act as receiver or liquidator of Boyd upon closing pursuant to the first order and Minn.Stat. § 48.57 (1982) (recodified at Minn.Stat. § 49.05, subd. (5)).

On October 24, 1984, several actions occurred. The trial court issued an order filed October 25, 1984 approving appointment of the FDIC as receiver or liquidator and vesting respondent FDIC with all necessary powers. State Bank of Madison (Madison) submitted a bid for purchase of Boyd's assets and assumption of its liabilities for a $226,000 premium. A contract of sale to Madison, an indemnity agreement between respondent FDIC and Madison, and a purchase and assumption agreement including a schedule of assets purchased by the assuming bank were signed by respondent FDIC. The trial court issued a second order filed October 25, 1984 approving sale of Boyd's assets and transfer of its liabilities to Madison. The record indicates notice of the Commissioner's order, application to the court, and trial court approval of the FDIC's appointment as receiver was personally served on then directors of Boyd.

Eleven months later, on September 20, 1985, appellants petitioned for an alternative writ of mandamus. Appellants here,

in addition to Boyd, are Boyd's holding company, former directors and shareholders, depositors, loan debtors, and unsecured creditors. That petition requested (1) recovery of appellant Boyd's property and business, (2) accounting for all property and business sold without approval of a court with competent jurisdiction, (3) placement of Madison's payment in escrow, (4) retaining appellants' business and property to permit appellants to move for injunction or other relief, (5) return of Boyd's charter, (6) conduct of all further proceedings pursuant to Minn.Stat. ch. 49, (7) set trial on damages following respondents' return to the writ, (8) punitive damages, and (9) attorney's fees. The trial court denied appellants' motion by order filed October 4, 1985.

Appellants also moved for Minn.R.Civ.P. 60.02 relief from the October 25, 1984 trial court order approving sale to Madison, asserting the trial court lacked subject matter jurisdiction because an inventory pursuant to Minn.Stat. § 49.24, subd. 1 had not been filed. Appellants further claimed respondent FDIC committed fraud upon the court by claiming clear title to appellant Boyd's assets. By order filed October 28, 1985, the trial court denied appellants' motion.

This appeal (C8-85-2078), filed November 6, 1985, is from the October 4, 1985 trial court order denying appellants' petition for an alternative writ of mandamus. Appellants have filed three additional appeals. An appeal (C8-85-2310) filed December 16, 1985 is from the October 28, 1985 trial court order denying appellants' rule 60.02 motion. Another appeal (CX-86-66), filed January 8, 1986, is from the October 25, 1984 order approving appointment of respondent FDIC as receiver or liquidator. A fourth appeal (CO-86-89), filed January 8, 1986, is from the October 25, 1984 order approving the sale to Madison of appellant Boyd's assets and transfer of its liabilities.

By order dated February 20, 1986, this court consolidated appeals C8-85-2310, CX-86-66 and CO-86-89. These appeals remained to be briefed and processed and the instant appeal continued unconsolidated.

## ISSUES

1. Did the trial court err in entertaining respondents' arguments before determining appellants' petition?

2. Did the trial court abuse its discretion in denying appellants' petition for an alternative writ of mandamus?

## ANALYSIS

■ 1. Appellants claim (a) a petition for an alternative writ of mandamus is in the nature of an ex parte proceeding, (b) an alternative writ petition must be determined solely on the basis of its compliance with mandamus standards, and (c) arguments opposing issuance of the writ of mandamus may not be heard until the issued alternative writ's return date. Appellants agree respondents are entitled to be heard, but claim respondents' defenses to mandamus are premature prior to issuance of the alternative writ.

The Minnesota Supreme Court has stated, however:

> According to statutory procedure, an answer is proper after the alternative writ has issued. Minn.St. 586.06. While it is clear that [defendant] did not comply with the strict dictates of the statute, the question is whether such error is cause for reversal. We do not believe so.
>
> If the trial court had struck [defendant's] answer and issued the alternative writ, [defendant] would have answered with the same allegations as in its original answer. On the merits, the issues would have been identical and would have created the same burdens of proof. Thus, the technical error did not affect the ruling upon the merits and is thus not reversible.

*State ex rel. Pillsbury v. Honeywell, Inc.,* 291 Minn. 322, 332, 191 N.W.2d 406, 413 (1971). Thus, the error if any in receiving and considering respondent's answer prior

to issuance of the alternative writ was harmless.

■ 2. Appellants claim the trial court abused its discretion in refusing to grant their petition for an alternative writ of mandamus. They assert the petition seeks only to enforce rights clearly conferred by statute and was procedurally correct. Appellants challenge the trial court's conclusions regarding the party directed by mandamus, standing, the rights of third parties, and the exclusiveness of remedy.

### (a) *Standing.*

Appellants claim they have standing to seek performance of respondents' statutory ministerial duties regarding liquidation. They allege harm flowing from improper liquidation of Boyd directly affected appellants' rights and (1) Boyd is entitled to return of its charter; (2) its holding company has an interest in its subsidiary; (3) its shareholders and directors are entitled to authorize consolidation and may be liable for losses to Boyd; (4) its loan customers and guarantors are entitled to proper court approval of bad or doubtful loan obligation sales; and (5) its unsecured creditors and depositors are entitled to respondent Commissioner's determination liquidation is in their best interests and to deposits of liquidation.

Respondent Commissioner argues appellants' petition constitutes an impermissible collateral attack on the trial court order because appellants lack standing.

To obtain a writ of mandamus, petitioner must meet the statutory standing requirements of Minn.Stat. §§ 586.01–586.02 (1982).

These requirements include (1) the existence of a law specifically requiring the performance of an act which is a duty imposed on a person resulting from the office that person occupies. Minn.Stat. § 586.01 (1982), and (2) a showing of a public wrong especially injurious to the petitioner and that petitioner will benefit from an order compelling performance of the duty. Minn.Stat. § 586.02 (1982).

*Friends of Animals & Their Environment (FATE) v. Nichols,* 350 N.W.2d 489, 491 (Minn.Ct.App.1984) (emphasis deleted), *pet. for rev. denied,* (Minn. Dec. 20, 1984). The trial court in its memorandum concluded appellants failed to meet either element:

To meet the first standing requirement, existence of a law requiring performance, Petitioners must first show some negative implication to the pertinent law, i.e. that the Commissioner can restore possession of property to the State Bank of Boyd after he has taken it away. Then they must show that that illusory duty is void of discretion. The objective of the Petitioners is neither the subject of a law, nor an undiscretionary duty of the Commissioner. They fail the first test of standing to bring a Writ of Mandamus.

The second standing test demands a showing of a public wrong, injurious to the Petitioners, which can be relieved through mandamus. They simply have failed to indicate with any specificity what wrongful act was committed or how they would benefit from the requested relief. In their role as depositors, their assets have merely been transferred, and then, in name only. There is no averment that these assets have been withheld from depositors. As loan customers, Petitioners again fail to specifically indicate what public wrong the FDIC is committing or how they would benefit from relief. It is probably a "more vigorous than before" loan collection policy which lies at the heart of this whole matter. While elements of fairness may be lacking, a wrong has not been shown and means to benefit from mandamus has not been indicated.

Finally, although the petition for Writ of Mandamus avers a status as shareholder and/or director of the State Bank of Boyd for some Petitioners, there are no clear indications that they held positions at the time the bank was closed. There is no named Petitioner with standing in any respect to bring this action for Writ of Mandamus.

We agree appellants lack standing. Several assert their interest as shareholder through Lac Qui Parle BanCorporation, Inc. which at one time owned 470 of Boyd's 500 outstanding shares. By agreement on May 29, 1984, Lac Qui Parle BanCorporation transferred its interest in Boyd's stock to Independent State Bank of Minnesota for discharge of a debt. Appellants at oral argument claimed that transfer was not approved by the shareholders of Lac Qui Parle BanCorporation. No evidence of shareholder disapproval is in the record. The record does indicate the Lac Qui Parle BanCorporation president indicated on May 29 he had the full authority of the shareholders to execute the agreement. Having no interest in Independent State Bank, appellants ceased to have a shareholder interest in Boyd prior to the date of closing and liquidation.

■ Other appellants claim standing as directors of Boyd. But these individuals were not directors at the time of closing. They are directors of Boyd as reorganized for purposes of litigation. Those claiming interest were retired prior to October 1984 from Boyd's board. Appellants' counsel admitted at oral argument these "directors" were not the same individuals as those serving at Boyd's closure.

■ Those appellants alleging an interest as depositors of Boyd claim an interest in reorganization during liquidation under Minn.Stat. § 49.07. To maintain an interest, reorganizers must "represent 90 percent of the amount of deposits and unsecured claims of the bank." *Id.* subd. 1. Appellants have made no such showing as admitted at oral argument and the record is devoid of such showing. Depositors' general interests are protected by FDIC insurance.

■ Unsecured creditors of Boyd also failed to establish adequate interest in reorganization. *Id.* No evidence shows unsecured creditors will not be paid in full. If these creditors do not receive repayment, they may file a claim against respondent FDIC in its receivership capacity.

■ Finally, loan debtors of Boyd claim an interest in determining whether their loans are bad or doubtful. They assert respondent Commissioner owes them a duty to properly exercise discretion in petitioning the trial court according to Minn. Stat. § 49.24, subd. 2. That subdivision protects creditors, not debtors. Debtors continue to owe the obligation.

Appellants have failed to demonstrate either injury or personal effect of an injury. By not so demonstrating, they have failed to establish standing.

(b) *Exclusivity.*

■ Even if appellants did have standing, Minn.Stat. § 49.04, subd. 2 provided them with an exclusive remedy. The statute reads:

**Application to enjoin liquidation.** Whenever any such financial institution of whose property and business the commissioner has taken possession as aforesaid deems itself aggrieved thereby it *may at any time within ten days after such taking possession apply to the district court to enjoin further proceedings,* and said court, after citing the commissioner to show cause why further proceedings should not be enjoined, and hearing the allegations and proofs of the parties in determining the facts, may upon the merits dismiss such application or enjoin the commissioner from further proceedings and direct him to surrender such business and property to such financial institutions.

Minn.Stat. § 49.04, subd. 2 (emphasis added). Appellants claim section 49.04 is inapplicable because its injunctive relief applies only to possession of a closed bank and not to the lawful liquidation of a bank. They assert even if the propriety of liquidation was not challenged within ten days of respondent Commissioner's taking possession, appellants are still entitled to proper liquidation performed in compliance with applicable state law. They argue to conclude otherwise would grant respondents undue discretion and latitude in performing the actual liquidation.

Section 49.04 provides an adequate remedy at law which is purposefully designed to expedite and provide stability for bank liquidation. "The time given is short, but, as already noted, public interest is involved and there is reason for prompt action." *American State Bank v. Jones,* 184 Minn. 498, 503, 239 N.W. 144, 146 (1931) (interpreting the legislative predecessor to section 49.04, subd. 2).

All parties agree the Commissioner had exclusive authority to remedy insolvent banks prior to 1943. Appellants claim legislative amendments to chapter 49 in 1943 and 1945 divested the Commissioner of exclusive power. The 1943 amendment required the district court to assume jurisdiction upon filing by the Commissioner of an inventory of the financial institution's assets. *See* Minn.Stat. § 49.24, subd. 1. The 1945 amendment required court order regarding the Commissioner's selling, compounding or compromising bad or doubtful debt. *See id.* subd. 2.

 Section 49.24 provides procedure to be followed when the Commissioner decides to close a bank, keep it forever closed, and liquidate its assets. Here, liquidation did not occur, but instead the Commissioner selected the more favorable method of closing the bank, arranging a purchase of its assets and assumption of its liabilities, and reopening the bank. *See* Minn.Stat. § 48.60; *see also* 12 U.S.C. § 1823 (1982). The requirements cited by appellants do not apply. Respondent Commissioner's exclusive authority to arrange a purchase and assumption may only be enjoined pursuant to Minn.Stat. § 49.04, subd. 2. *See Federal Deposit Insurance Corporation v. Maiers,* (D.Minn. Mar. 11, 1986) (related case in which the federal court also found section 49.04 to provide an exclusive remedy). Appellants did not file for an injunction within ten days after the Commissioner took possession of the bank. They are therefore barred from doing indirectly by mandamus what they failed to do directly. *See Waters v. Putnam,* 289 Minn. 165, 172, 183 N.W.2d 545, 550 (1971).

3. Because we hold the trial court correctly denied appellants' petition for alternative writ of mandamus based on lack of standing and exclusiveness of other remedy, we do not reach appellants' arguments regarding the party directed by mandamus and mandamus' effect on interested parties.

### DECISION

Any error, if any, in entertaining respondents' arguments prior to issuing the alternative writ was harmless. The trial court properly denied appellants' petition for alternative writ of mandamus due to lack of standing and failure to timely pursue the statutory remedy.

Affirmed.